217 So.2d 166

**E. M. FREEMAN, d/b/a E. M. Freeman and Associates**

v.

**DEPARTMENT OF HIGHWAYS.**

No. 48729

June 4, 1968.

On Rehearing Nov. 12, 1968.

Rehearing Denied Dec. 16, 1968.

Morgan, Baker, Skeels & Coleman, by Ado C. Skeels, Shreveport, Breazeale, Sachse & Wilson, by Victor A. Sachse, Baton Rouge, for plaintiff-relator.

Kantrow, Spaht, Weaver & Walter, Carlos G. Spaht, Baton Rouge, amici curiae for plaintiff-relator.

Philip K. Jones, D. Ross Banister, Norman L. Sisson, Elven E. Ponder, Baton Rouge, for defendant-respondent.

SUMMERS, Justice.

Certiorari was granted to review a judgment of the First Circuit rejecting, in part, the claim for damages for breach of contract asserted by the plaintiff E. M. Freeman against the Department of Highways. See 197 So.2d 188 and 250 La. 928, 199 So.2d 925.

Plaintiff's suit arose out of two contracts entered into with the Department of Highways, wherein he agreed to perform engineering service on two segments of the national system of interstate highways in Louisiana.

The first contract, Number 13, dated June 25, 1957, represented that the Department had completed a topographic survey; and, by the terms of the contract, the Department engaged plaintiff to perform engineering services in connection with the preparation of preliminary and contract plans, specifications and estimates of costs, including supplemental topographic surveys, for the Greenwood-Shreveport section of the interstate system. The service to be performed by the engineers was to be divided into two successive phases covering: (I) All investigations, studies and surveys necessary or required for, and the preparation of, preliminary plans; and (II) the making of right of way survey and map, the preparation of construction contract plans and specifications, and the checking of contractors' shop drawings.

The Department agreed to furnish to the engineers for use in the preparation of the required plans and designs certain services and data, consisting of: (1) Information showing locations of route, and location and schematics of interchanges, bridges and grade separations, (2) topographic survey, (3) traffic assignments for determining design of the project, (4) information in the Department's files as to boring data, surveys, plan and studies within the area and assistance in securing similar data from others, and (5) prints of standard plans of bridges, culverts and incidental drainage structures.

Phase I of Contract Number 13, including completion of the subsurface investigation and delivery of the preliminary plans and estimates, was required by the contract to be completed within six months after receipt of notice to proceed. Phase II was to be completed within four months.

The other contract, Number 37 dated May 19, 1958, covers the Texas State Line-Greenwood Section of the interstate system. It differs from Contract No. 13 in effective dates and the segments of the highway affected. The contracts are otherwise essentially the same.

One provision of the contracts which is of special concern to us relates to delays and extensions, for it is this provision which the Department relies upon to defeat the claims of plaintiff in this suit. It is an exculpatory clause which reads as follows:

"Delays and Extensions:

"The Engineers will be given credit and extension of time for delays beyond their control or for those caused by tardy approvals of work in progress by various official agencies, but no additional compensation shall be allowed for such delays."

While conceding that delays occurred which were not attributable to the plaintiff engineers, the Department maintains that the quoted clause relieved it of responsibility for the delays notwithstanding the fact that the Department may have caused them. The plaintiff, on the other hand, contends that the clause does not exculpate the Department, for it applies only to delays attributable to "various official agencies", meaning agencies other than the Department; and since the Department is not relieved of responsibility for delays which it caused, it must compensate plaintiff for the damage which plaintiff incurred by reason of the delays.

The trial court gave judgment for the contractor, being of the opinion that the Department had unduly and unnecessarily delayed plaintiff's compliance with the contracts. The Department's contention that the quoted exculpatory "Delays and Extensions" clause of the contracts relieved it of liability for damages for delays was disallowed. The trial judge reasoned that the clause did not refer to delays of the Department, but, instead, referred to delays by

agencies other than the Department itself. In its decision, the court cited and relied upon Sandel & Lastrapes v. City of Shreveport, 129 So.2d 620 (La.App.1961) decided by the Second Circuit Court of Appeal.

In the Sandel & Lastrapes Case, the City of Shreveport was sued by the contractor under a construction contract for damages caused by the City's failure to timely furnish concrete pipe to be used in the construction project as provided for in the contract. The City resisted liability for damages caused by delays for which it was admittedly responsible, urging in support of its position an exculpatory clause of the contract, which it contended relieved it from liability for "any delays". The Second Circuit held that "It is contrary to public policy to allow a contractee to stipulate exemption from negligent acts which cause injury." Accordingly, the City was held to respond for the damage incurred by the contractor due to the City's delay in providing the concrete pipe

In the instant matter, the First Circuit Court of Appeal stated that it did not agree with the Sandel & Lastrapes Case, but in the final analysis it distinguished the Sandel Case from the case at bar. The apparent conflict created by the statement of the First Circuit prompted us, at the urging of the plaintiff, to grant certiorari.

Now that the record is before us and we have had an opportunity to study the contracts in detail and have considered them in the light of the facts disclosed by the voluminous record, we are aware that this case involves the application of facts to a contractual provision distinguishable from the facts and the contract in the Sandel and Lastrapes Case. We find it unnecessary, therefore, to reconcile the alleged conflict between these cases and address ourselves, instead, to the merits of the case at hand.

*The Delays and Extensions Clause*

The first issue presented is whether the Department is contractually responsible for actions or nonactions which may have hindered plaintiff in his work and caused damages. This involves an interpretation of the "Delays and Extensions" clause; for if the Department is not contractually responsible for delays caused by it, we need not inquire into whether the delays were or were not caused by the Department.

We find, however, that the "Delays and Extensions" clause does not exonerate the Department. The clause refers to official agencies other than the Department—third parties whose approval or actions might be involved in the contract. For example, because this project was in large measure financed by Federal funds, the Bureau of Public Roads may, conceivably, have delayed approval of plans and designs submitted by plaintiff. A delay by the Bureau would have been caused by one of the "official

agencies" referred to in the contract and would have been beyond the control of the Department. Plaintiff would, under the language of the clause, be entitled to credit and extensions of time, but no additional compensation would be due by the Department for actions of third parties. Thus the clause seeks to exculpate the engineers and the Department for delays "beyond their control" or for delays "caused by tardy approvals of work in progress by various official agencies". For, while the clause provides that the engineer is not responsible for such delays, he receives no extra compensation from the Department for the delays caused by others, but, instead, is granted extensions of time to compensate for these delays, thus avoiding a default under the contract if the work is not completed on time. In like manner the Department is exculpated from the payment of compensation for the delays of third parties, but, at the same time, it must grant additional delays. Nothing is said otherwise about relieving the contracting parties from violations of their contractual obligations. Certainly nothing is said about relieving the Department of the obligation to pay the engineers for damages caused by delays of the Department.

■ When the contract is considered as a whole, the Department's argument is readily disclosed to be untenable. La.Civil Code art. 1948. There are numerous references to the "Department" throughout the contract. In each instance we have noted where the Department is intended to be referred to, "Department" is used. We think the reference to "various official agencies" is, therefore, a reference to agencies other than the Department—agencies whose influence upon the contract could not have been foreseen when the contract was confected and over which the Department had no control. If the Department intended to include itself within the "Delays and Extensions" clause provisions, it would have said so. The contract was its own, prepared by it and in general use. La.Civil Code art. 1958.

■ To include the Department within the meaning of "various official agencies" as used in the "Delays and Extensions" clause would, moreover, be to say that the Department could provide, contractually, that work must be performed within a stipulated time subject to approvals by it, and, at the same time, that it would bear no responsibility for damages incurred by the contractor resulting from its failure to timely approve performance. The provision would, in effect, make the performance of the agreement depend entirely upon the will of the Department, one of the contracting parties, who, by deliberate delays in approvals of plans or designs, could hinder the contractor in the performance of his contractual obligations without any responsibility on the part of the Department for the hindrance. The con-

tract would then be subject to a potestative condition and null. La. Civil Code art. 2024, 2034. We do not construe a contract to nullify it when its language does not unequivocally require such a construction. La. Civil Code art. 1951; Sporl v. New York Indemnity Co., 176 La. 363, 145 So. 771 (1932); Note, 8 Tul.L.Rev. 124 (1933). We are bound to give effect to all contracts according to the true intent of the parties determined by the words of the contract. La. Civil Code art. 1945. Accordingly, we reject the Department's contention and give the language of the contract effect by saying the clause "various official agencies" does not include the Department.

### Who Caused the Delays?

Notice to proceed with the work on Phase I of Contract Number 13 was issued July 9, 1957, and on November 27, 1957 the proceed order was issued for Phase II. It was agreed that Phase I of this contract would be completed within six months, and Phase II was to be completed within four months, meaning that both phases of Contract Number 13 should have been completed prior to March 27, 1958. The contract, however, was not accepted as completed until July 19, 1960. Thus, plaintiff was required to be engaged in the performance of this contract almost 27 months beyond the date when completion was contracted for. Nowhere in the record is it established that the delay involved

was due to plaintiff's action or nonaction; rather, it is convincingly established that plaintiff held a fully complimented staff ready at all times to expedite the completion of work required by the contract and plaintiff did in fact perform its obligations under the contract with dispatch.

The work order for Phase I of the second contract, Number 37, was issued May 20, 1958, shortly after the anticipated completion date of the first contract, and on January 7, 1959 the work order was issued for Phase II. The job was, therefore, expected to be finished on May 7, 1959, four months after issuance of the work order on Phase II; it was not accepted, however, until August 19, 1960. Plaintiff was, in consequence, engaged in the performance of the work under this contract 15 months longer than the time agreed upon. Again, as in the first contract, no action or nonaction on plaintiff's part is assigned as a reason for the inordinate delays which admittedly occurred.

The delays attributed by plaintiff to the Department about which plaintiff complains are that (1) the Department's employees tardily supplied or failed to supply standard plans for bridges, culverts and other structures as required by the contract; (2) the Department failed to furnish necessary preliminary right of way information, made revisions during the course of the work requiring the acquisition of additional rights of way and failed to provide access

to certain properties in order that plaintiff could complete right of way maps; (3) defendant delayed, ignored or deferred repeated requests for certain soil reports required by plaintiff for design work; and (4) the Department was guilty of immoderate delays in approving plans.

The delays which did occur, as we have noted, were not caused by plaintiff. To the contrary, plaintiff maintained his fully complimented staff throughout the period during which he was attempting to accomplish the work called for by the contract. We understand this was necessary to avoid delaying the work and in order to have adequate and properly trained personnel on hand when work could be performed. The Department makes no convincing effort to assign the cause of delay to plaintiff and, unexplainably, makes no effort to assign the cause for delay to others.

■ Without reviewing the evidence in detail here, we are satisfied from our study of the record that the Department was responsible for inordinate delays which plaintiff could not be expected to anticipate. The delays were a violation of the Department's contracts with plaintiff and brought about damage to plaintiff for which recovery should be allowed.

The principal delay, which we shall cite, was brought about by the Department in making a contract with Engineering Testing Laboratory, Inc., for subsurface soil testing required by plaintiff before designs of certain bridges and other structures could be finalized. Changes in procedure of the Department's right of way section entailed innumerable other delays, and the Department's failure to timely furnish standard plans and specifications for plaintiff's use, changes in standards relating to vertical clearances, sidewalk dimensions, the position of a bridge, the type of foundations required for overpasses, a change in the location or routing of the highway, a change in location of a segment of the highway because of a subsurface pipeline, delays in approval of plans and designs submitted, relocation of the bridge or overpass at Broadacres Road to the White Pines Road, requiring a new schematic plan for the Greenwood and T & P location, revision of Greenwood Interchange and Buncomb Road Crossing, the Fournoy-Lucas Road Crossing and U.S. 79 connection, together with others, all caused delays because of the Department's action or nonaction making performance within the time stipulated impossible.

When plaintiff entered into these contracts he properly assumed that his services would be required during the time stipulated for performance by the contract—approximately 14 months. Instead he was required to hold his staff in readiness from June 25, 1957 to August 19, 1960—more than three

years—with the resulting additional expense which he asserts.

## Quantum

In support of his claim for damages, plaintiff submits his added payroll costs which he allocated to the work performed. Careful records were kept of these payroll costs which the Department audited. There is no claim that these figures are not correct. Plaintiff has not exaggerated his claim in the least. To the contrary, he has not sought profit or reimbursement for general overhead, or compensation for his own services, but only the added money it cost him to keep his organization intact to finish these contracts. The claim should be allowed.

We adopt, as our own, the formula used by the trial court in making the awards for damages on account of the violation of the contract by the Department.

"Allowing twelve months, which the court considers reasonable under the evidence in this case, for the completion of the first contract, plaintiff has calculated his payroll attributable to this job subsequent to July, 1958. It amounts to $56,028.33, and the sum of $21,238.67 for overhead payroll, making a total of $77,267.00. Also allowing twelve months for the completion of the second contract, which this court deems to be reasonable and fair under the evidence in this case, plaintiff has calculated his payroll direct-

ly attributable to that job from May 20, 1959, which amounts to the sum of $33,198.51, and the sum of $16,249.18 for overhead payroll, making a total of $49,447.69."

Plaintiff also claimed the Department had not reimbursed him properly under provisions of the contract for work he performed. The district court awarded $15,208.46 under Contract Number 13 and $9,711.30 under Contract Number 37. The $9,711.30 award was approved by the Court of Appeal and no appellate review was sought of the $15,208.46 award. We do not consider these latter awards to be disputed. The application for writs made no reference to a review of these awards and there is no mention of them in brief by the Department.

## Putting in Default

■ The Department asserts plaintiff cannot recover, for even if a breach of contract occurred it was a passive breach, and plaintiff is not entitled to damages prior to filing suit because he did not put the defendant in default prior thereto. Articles 1933 and 1911 of the Civil Code are relied upon to support the contention.

In answer, we find several letters written by the plaintiff to the Department calling upon it to meet its obligations under the contract, and pleading with it to expedite the work. In addition, plaintiff made sev-

eral trips to Baton Rouge in an effort to persuade defendant to meet its obligations and to expedite the work.

"Demands for the performance of a contract are not to be considered ineffective because couched in polite terms; all that is necessary is that the terms be sufficient to let the obligor know that performance of the contract is expected." Hafner Mfg. Co. v. Lieber Lumber and Shingle Co., 127 La. 348, 53 So. 646 (1909).

For the reasons assigned, the judgment of the Court of Appeal, First Circuit is reversed in part and affirmed in part and judgment is rendered herein reinstating and affirming the judgment of the trial court.

McCALEB, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct. See La., 197 So.2d 188.

HAMLIN, J., dissents, being of the opinion that the decision of the Court of Appeal is correct.

### ON REHEARING

McCALEB, Justice.

A rehearing was granted in this case for the purpose of reconsidering the correctness of our interpretation of identical clauses appearing in two contracts be-

tween plaintiff and the Department of Highways wherein the Department engaged plaintiff to perform engineering services in the construction of two segments of the national system of interstate highways in Louisiana.

The decree rendered by this Court on first hearing affirmed the judgment of the trial court awarding plaintiff the sum of $151,634.45 plus interest and costs. The Court of Appeal had amended the district court's judgment by reducing the award to plaintiff to $24,919.76 with legal interest and assessing only stenographic costs against the defendant, and all remaining costs were ordered to be paid by plaintiff. See 197 So.2d 188.

The facts of the case are set forth in detail by the Court of Appeal and also in our opinion on first hearing. The salient question presented to this Court is the meaning and interpretation to be given to a certain provision appearing in both contracts [1] which controls plaintiff's right to redress from the Department for damages occasioned by delays allegedly caused by the Department's tardy approvals of work in progress and the quantum of damages, if any, recoverable thereunder.

Plaintiff"s position is that certain delays in approval of work in progress were due to the fault of the Department of

---

1. Since the provision is identical in both contracts of employment, we shall refer to it in the singular in our discussion of the issues presented.

Highways, and he seeks recovery for the payroll costs of his entire engineering work crew during the period of these delays, extending for twenty-six months on one contract and fifteen months on the other. The Department, on the other hand, while denying in any case any liability for work-crew payrolls during periods when no work was performed, maintains that the contractual clause at issue relieved it of responsibility for such delays even though they may have been caused by its tardy approval of work in progress or for any other cause.

Plaintiff contends the contractual clause in ambiguous and proclaims that the exculpating provisions apply only to delays attributable to "various official agencies" other than the Department, i. e., the United States Bureau of Public Roads. Defendant asserts that the clause is clear and explicit and, hence, needs no interpretation.

The provision of the contract reads:

"Delays and Extensions:

"The ENGINEERS will be given credit and extension of time for delays beyond their control or for those caused by tardy approvals of work in progress by various official agencies, but no additional compensation shall be allowed for such delays." [2]

This Court on first hearing, unlike the Court of Appeal, found the above-quoted provision ambiguous, insofar as the phrase "various official agencies" was concerned, and ruled that such phrase referred to all third party official agencies, other than the Department of Highways, " * * * third parties whose approval or actions might be involved in the contract * * * ", such as the United States Bureau of Public Roads which financed the major portion of these projects. It was reasoned that, when the language of the exculpating clause is considered in connection with the other provisions of the contract containing numerous references to the "Department", it was intended by the parties that the phrase "various official agencies" was to apply to non-contracting agencies other than the Department. Further, in reconstructing the meaning of the phrase "various official agencies," it was deduced that, should the exculpating provision be construed to mean that the Department

2. Other provisions of the contract having pertinence to this case are quoted at length in the opinion of the Court of Appeal, particularly the above-quoted provision and the paragraph entitled "Revisions of Plans" (see page 191 of 197 So.2d). Defendant admitted owing plaintiff a balance of $15,208.48 for work done under Contract 13, and the Court of Appeal found that the trial judge was correct in awarding plaintiff additional compensation for work performed under Contract 37 in the sum of $9,711.30. The total unpaid compensation of $24,919.76 for all balance due for services actually performed in no longer at issue in the case inasmuch as the Department has acceded to the Court of Appeal judgment.

would bear no responsibility for damages incurred by the contractor as a consequence of tardy approvals of work in progress by the Department, then the contracts would be subject to potestative conditions and null under Articles 2024 and 2034 of the Civil Code.

In its application for rehearing, as well as in argument, the Department urges that our opinion on first hearing has, in effect, rewritten the exculpating provisions to read "various official agencies *exclusive of the Department of Highways*" and that such an interpretation is wholly unwarranted since the Department of Highways is an official agency and no such exclusive term was provided. The Department also asserts the opinion on first hearing has lost sight of the fact that these contracts are for the employment of engineering *services,* and it was certainly not contemplated by the parties that the Department would be responsible to plaintiff for the cost of keeping a full-time staff during periods of delay.[3]

A review of the case convinces us that our initial ruling, which would interpret the "Delays and Extensions" clause so as to render the Department liable to plaintiff

for additional compensation for delays resulting from the Department's tardy approval of work in progress, is not well founded. In fact, after reconsidering the contracts involved herein, we have no hesitancy in holding that the above-quoted "Delays and Extensions" clause explicitly and unequivocally denies to plaintiff any right to recover from the Department additional compensation or damages occasioned by delays in progress of the work resulting, either from causes beyond the control of plaintiff, or for those caused by tardy approvals of work in progress by any official agency, including the Department.

The contracts under which this suit is filed are contracts of employment by the Department of Highways of plaintiff's engineering firm to perform various engineering services in connection with the construction by the Department of two segments of the national system of interstate highways in Louisiana. Under these agreements the plaintiff is the obligor, and he was required to furnish the services specified in the contracts which were divided into two phases, the first phase in both contracts to be completed within

---

3. It is conceded that numerous delays occurred in the progress of the work in the instant case, which no doubt were taken into consideration by the parties at the time the exculpating clause was placed in the contracts. Apart from these delays, a number of revisions or changes took place, as well as additions to the project. (The Monkhouse Drive Interchange was one of these; an interchange initially was planned for Curtis Lane.) The opinion of the Court of Appeal discusses these revisions in detail.

six months following date of notice to proceed, and Phase II to be completed within four months following notice to proceed with that phase. The contracts, as we have also noted in footnote 2, provided for additional compensation in the form of a lump-sum payment to plaintiff in the event of revision of the plans by the Department, either during or after completion of the work. And following the contractual provisions for payment of the provision requiring payment of ad- this additional compensation occasioned by revisions of plans is found the clause in controversy entitled "Delays and Extensions" which we have quoted above.

It will be noted at the outset that, unlike the provision requiring payment of additional compensation for revisions of plans, the delays and extension provision declares that "The ENGINEERS will be given credit and extension of time for delays *beyond their control* or for those caused by tardy approvals of work in progress by various official agencies, *but no additional compensation shall be allowed for such delays."* (Italics ours.) We doubt that the intention of the parties could be expressed more succinctly and understandably than in this provision. Indeed, since it clearly specifies, and the contracting parties stipulate, that the obligee, the Department of Highways, is not to be liable for any additional compensation occasioned by such delays, that

is, the delays which may occur from causes beyond plaintiff's control, it matters not whether such delays are caused by the Department or by third persons.

Therefore, it is actually immaterial whether or not the Department was intended to be included among the "various official agencies" since the Department as the other contracting party was not liable to plaintiff for additional compensation occasioned by delays in the completion of the contract, whatever the cause of the delay. This was the contract of the parties and, as stated in Article 1901 of the Civil Code, it had the effect of law. Further, Article 1945 of the Civil Code, which treats of the interpretation of agreements, provides in part: "Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them." Upon this principle the article establishes the following rules applicable to this case:

"Second—That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;

"Third—That the intent is to be determined *by the words of the contract,* when these are clear and explicit and lead to no absurd consequences; (Italics ours)

"Fourth—That it is the common intent of the parties—that is, the intention of

all,—that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract."

Let us consider the contracts in question guided by the rules set forth in Article 1945. It was a contract of employment between Department and plaintiff for engineering services to be furnished under the terms of that agreement. And that agreement, in explicit and clear language provides that the plaintiff shall not be entitled to additional compensation in the event his performance is delayed as a result of acts beyond his control or whether it is occasioned by tardy approvals of work in progress by various official agencies. In such instances, the plaintiff is entitled only to credit and extension of time for his performance.

Under this view of the case, it would normally be superfluous to determine whether the Department was included in the part of the "Delays and Extensions" clause which refers to delays attributable to tardy approvals of work in progress by various official agencies.

However, since our original opinion was based on the conclusion that the Department was excluded from the term "various official agencies", it is apt to express our present views concerning this conclusion. Initially, the conclusion had to be reached by determining that the provisions of the "Delays and Extensions" clause were vague and indefinite—a holding with which we do not agree for the reasons stated above.[4]

■■■ Furthermore, we do not perceive why the Department by any process of construction should be excluded from the

4. In this connection, the Court of Appeal in its opinion correctly observes:
"Before considering the hereinabove cited clear and unambiguous contract provisions which we deem decisive of the case at hand, we note that the parties are experienced in the complexities of highway construction and its attendant problems. We also find from the evidence that all concerned were or should have been aware of the delays normally to be expected in the course of road construction of the scope involved in these contracts. Nothing in the record indicates an overzealousness on defendant's part to include exculpatory provisions in the contracts to diminish the effect of the agreements or take advantage of an inexperienced or naive party. The previously quoted paragraphs entitled 'Revision of Plans' and 'Delays and Extensions' expressly provide for the eventuality of delays and specifically and lucidly establish the mode of payment to plaintiff in the event delays should occur.

"We also find that as an experienced engineer, plaintiff was or should have been aware of the likelihood of such delays and signed the contracts with full knowledge and appreciation of the possibility that progress of the work would from time to time be delayed by circumstances revealed during planning and construction, by changes dictated by the defendant during work progress and by the necessity of approval of plans both by various segments of the Department involved in a project of such magnitude and by at least one agency of the Federal Government." (See 197 So.2d at page 198.)

term "various official agencies." The fact that the word "Department" is used throughout the contract is not indicative of an intent to exclude it from the term "various official agencies." The reason why the word "Department" is used throughout the contract is because it is one of the parties thereto (the obligee thereunder). The Department is an official agency, and the term "various official agencies" necessarily includes, we think, all official agencies which might be required to give approval of work in progress. The United States Bureau of Public Roads was one of these agencies, and there might have been others, besides the Department of Highways, which were required to give approval to the construction work in progress.

■ Nor do we find substance in the alternative reason for our conclusion on first hearing that, should the Department be included within the meaning of the term "various official agencies" as used in the "Delays and Extensions" clause, it would render that provision null as containing a potestative condition in violation of Articles 2024 and 2034 of our Civil Code.

In the first place, we entertain grave doubt that the "Delays and Extensions" clause is a condition of the contracts. It is simply one of the mutual covenants of the commutative contracts wherein the parties agree that credit and extension of time for performance will be given plaintiff for all delays of work beyond his control or for delays caused by official agencies in approving work in progress, but it is understood and agreed that no additional compensation would be due plaintiff for such delays.

Moreover, should the provisions of the clause be regarded as a condition, it cannot be considered as potestative under any aspect of the case. For a potestative condition, according to Article 2024 of the Civil Code, is one "* * * which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder." Surely, a contractual provision stipulating that the obligee shall not be liable for additional compensation, should he delay performance of the obligor by tardy approval of the progress of the work, cannot be adjudicated to be potestative. For the agreement did not vest the Department with the power of preventing plaintiff from performing his obligation under the contract and, had the Department attempted to do so, it would unquestionably have been required to respond in damages for breach of contract. On the contrary, the provision which has been said to be potestative, if it is enforced as written, does not have to do with performance. It merely provides that the Department shall not be liable for any compensation attributable to de-

lays caused by "tardy approvals of work in progress"; it does not vest in defendant the absolute right to prevent plaintiff's performance, which is an essential quality of potestative conditions.[5]

This case, as noted in our original opinion, was brought to this Court because of an asserted conflict between the decision herein of the Court of Appeal, First Circuit, and that of the Court of Appeal, Second Circuit, in Sandel & Lastrapes v. City of Shreveport, 129 So.2d 620, which authority the First Circuit refused to follow. On first hearing, we found it unnecessary to discuss the Sandel case because of the interpretation given to the "Delays and Extensions" clause. Since we reject our previous interpretation, we feel obliged to determine whether the Sandel case is correct, and, if so, whether it is distinguishable from the case at bar.

In the Sandel case, the contractors, Sandel and Lastrapes, entered into a written agreement with the City of Shreveport to construct an outfall pumping station for a fixed price. The contract provided that the City was to furnish the contractor with the necessary reinforced concrete

pipe in 16 foot lengths which the contractors were to install after completion of the excavation. As a result of inordinate delays by the City in delivering this pipe, the contractors sustained damages and brought suit for recovery, contending that the City, by its deliberate delay in furnishing the materials for construction, had breached the contract. In denying liability, the City pleaded two provisions of the contract, the first of which (SC-6) declared in substance, "the Contractor's attention is directed to the fact that he will have to accept the risk of any delays in delivery of equipment to be furnished by the Owner and that in the event he is delayed in the prosecution and completion of the work because of this condition of delay, he shall have no claim for damages or contract adjustment, other than an extension of time and the waiving of liquidated damages for and during the period of time occasioned by such delay."

The Court of Appeal held, on the merits, that this provision (SC-6) was not applicable since it referred only to delays in the delivery of *equipment,* whereas the delays were occasioned by failure in the delivery of *material,* i. e., concrete pipe,

---

5. In addition, it is to be observed that there are only certain potestative conditions which render an agreement null under Article 2034 of the Civil Code. These are called purely potestative conditions. See, among other cases, Morrison v. Mioton, 163 La. 1065, 113 So. 456; Stephen L. Guice & Co. v. Perkowski, La.App., 12 So.2d 692; and Humble Oil & Refining Co. v. Guillory, 212 La. 646, 33 So. 2d 182. See also Article 2035 of the Civil Code, and Brown, The Potestative Condition in Louisiana, 6 Tul.L.Rev. 23; Long v. Foster & Associates, Inc., 242 La. 295, 136 So.2d 48.

which could not be considered as equipment.

The other provision of the contract pleaded by the City was SC-15, which declared in similar terms that the contractor will have to accept the risk of any delays "* * * caused by the rate of progress of the work to be performed under other contracts or by the City or Others and that in the event he is delayed in the prosecution and completion of his work because of such conditions, * * *" the contractor shall have no claim for damages or contract adjustment during the period of time occasioned by such delay or delays. Again, on the merits of the case, the Court of Appeal held that, since the City had deliberately failed to comply with its contract by furnishing the material required of it within a reasonable period, it was liable for the damages sustained by the contractor, and that the exculpating clause SC-15 was without application because the delays were not caused by the rate of progress of work "* * * to be performed under other contracts * * *" either by the City or others.

■ On the facts found by the Court of Appeal on the merits of the case, we think it clear that the matter may be distinguished from the case at bar. However, it is true that, in considering an exception of no cause of action filed by the City, which was predicated on the provisions of Sections SC-6 and SC-15 of the contract, the Court of Appeal ruled that the exception was without merit because the exculpating clauses were contrary to public policy since they would permit a contractee "* * * to stipulate exemption from negligent acts which cause injury." No authority is cited for this holding, and we know of none which supports the view that it is against public policy for contracting parties to agree that, in case one of them fails to perform a certain act timely and thus delays the other in the performance of his obligations, the former will not be held responsible for any damages caused by the delay. Accordingly, in this respect, we find that the Court of Appeal, First Circuit, was correct in refusing to follow the decision in the Sandel case.

For the reasons assigned, the judgment of the Court of Appeal is affirmed. The right is reserved to plaintiff to apply for a rehearing.

SUMMERS, J., dissents and adheres to the original opinion of the Court.

SUMMERS, J., dissents from the refusal to grant a rehearing.