283 So.2d 822 (1973)
ALAN ABIS, INC., Plaintiff-Appellant,
v.
BURNS ELECTRONIC SECURITY SERVICES, INC., Defendant-Appellee.
No. 12125.
Court of Appeal of Louisiana, Second Circuit.
September 11, 1973.
J. Stacey Freeman, Shreveport, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley, by Richard H. Switzer, Shreveport, for defendant-appellee.
Before AYRES, BOLIN and HALL, JJ.
AYRES, Judge.
This is an action for damages allegedly due to the improper and defective installation of a burglar-alarm system. Plaintiff owns and operates a clothing store. Defendant is engaged in the business of erecting, installing, maintaining, and operating burglar-alarm systems.
The defendant, under date of August 28, 1972, undertook by written contract to install and maintain, or cause to be installed and maintained, during the term of the agreement, on plaintiff's premises, a central protective signaling system including transmission boxes and wire connections necessary to transmit signals from plaintiff's premises to defendant's central station. The contract stipulated that defendant on receipt of a signal from plaintiff's premises would dispatch a representative thereto to act as agent and in the interest of plaintiff with the authority to search the premises and apprehend and cause the arrest of any person or persons whose presence thereon was not authorized.
After the system was installed and placed in operation, plaintiff's place of business was burglarized on October 14, 1972, and merchandise valued at $7,864.91 was taken therefrom. The burglary was undetected allegedly due to the negligence of defendant in its failure to install proper *823 burglar-alarm equipment and to properly install and connect the equipment so that detection of the burglary could be made. Damages were sought in the amount of the value of the property allegedly taken from the premises.
To plaintiff's petition defendant interposed, in the nature of a motion for a summary judgment, an exception of no cause and of no right of action for damages in excess of $250.00. This position was taken under the terms of the contract wherein damages were limited or restricted to that amount. Defendant accordingly deposited, to plaintiff's credit, in the registry of the court the aforesaid sum including accrued interest and cost.
The exception was sustained and plaintiff's demands were rejected except as to the amount deposited in the registry of the court. The clerk of court was accordingly authorized and directed to pay plaintiff the proceeds of the deposit. From the judgment thus rendered and signed, plaintiff prosecutes this appeal.
The basis of defendant's exception is found in the language of Article 10 of the contract entered into between the parties. It is there recited:
"It is understood that the Contractor is not an insurer, that insurance, if any, shall be obtained by the Subscriber and that the amounts payable to the Contractor hereunder are based upon the value of the services and the scope of liability as herein set forth and are unrelated to the value of the Subscriber's property or the property of others located in Subscriber's premises. The Subscriber does not desire this contract to provide for full liability of the Contractor and agrees that the Contractor shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert; that if the Contractor should be found liable for loss or damage due to a failure of service in any respect, its liability shall be limited to a sum equal to ten percent of the annual charge or $250, whichever is the greater, and that the provisions of this paragraph shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of the Contractor, its agents or employees."
Plaintiff's position is that the aforesaid provisions of the contract are null and void as being in violation of the public policy of this State which allegedly prohibits a party by contract from stipulating an exemption or limitation of liability from his own negligent acts. Defendant contends, however, that a contract providing for such exemption or limitation is not void as violating any public policy of this State.
Plaintiff and defendant both rely for support of their respective positions upon pronouncements of this court. Plaintiff relies upon Sandel & Lastrapes v. City of Shreveport, 129 So.2d 620, 624 (La.App. 1961); defendant relies upon Jennings v. Ralston Purina Company, 201 So.2d 168 (La.App. 1967). Both cases involved contractual exemptions from liability for damages occasioned by unintentionally committed tortious acts.
The Sandel case was an action ex contractu for damages allegedly resulting from the city's breach of an obligation to furnish concrete pipe to plaintiff-contractor in connection with an extension of the city's sewer system. From a judgment entered for plaintiff, defendant appealed to this court where it was held that the city's delay in meeting its obligation to furnish pipe was a deliberate breach of its agreement. A pronouncement made therein by the court employs this language: "It is contrary to public policy to allow a contractee to stipulate exemption from negligent acts which cause injury." Plaintiff was accordingly awarded damages.
*824 The defendant nevertheless contends that the pronouncement made in Sandel is no longer the law and, moreover, that the provisions of contracts exempting or limiting liability of tort-feasors from their own negligence are not null and void as against public policy, but that such principle has long been rejected in all but a few jurisdictions and that Louisiana is not one of those "few" jurisdictions.
The case relied upon by defendant, Jennings v. Ralston Purina Company, supra, was an action by a contractor's employee against an alleged third-party tort-feasor for injuries sustained in a fall to the ground from a shed roof on a building owned by the named defendant. The alleged tort-feasor and its insurer in a third-party proceeding impleaded plaintiff's employer and its insurer as third-party defendants. In resolving the many issues presented for determination it was held, inter alia, that, in the absence of the establishment of the giving of any effective warning or of any acts of contributory negligence or assumption of risk, plaintiff-roofer was entitled to recover for damages sustained in his fall when he slipped on a surface made wet and slippery as the result of the drainage of water from an upper-floor wall-hosing operation of defendant's employees. There was in existence at the time of the accident an indemnity agreement wherein the contractor was obligated to indemnify the owner, Ralston Purina, against any damage or injuries arising out of the performance of the contract whether or not such damage resulted from the owner's negligence or otherwise. Hence, it was held that the contractor was under obligation to indemnify the owner for the injuries to the contractor's employee who slipped and fell from defendant's shed roof because of and due to the owner's employees' negligence. Although it was therein pointed out that a contract of indemnity whereby one assumes indemnification against his own negligence must be strictly construed, nevertheless it was noted that such an indemnity agreement against one's one negligent acts was not void as contrary to public policy.
In the course of our opinion in the Jennings v. Ralston Purina case, supra, this court observed:
"Counsel for third party defendants also urgently contends that a contract of indemnity whereby one assumes indemnification against his own negligence must be strictly construed. We have no quarrel with this principle. However, it matters not how strictly we construe the indemnity provision of the contract against Ralston as contractee nor how liberally we might construe the provision in favor of Efurd, the contractor, we cannot conceive of any conclusion which would detract from the clearly quoted, specifically stated and thoroughly comprehensive obligation on the part of Efurd to indemnify Ralston against any damage or injury arising out of the performance of the contract whether or not such damage resulted from Ralston's negligence.
* * * * * *
"We find no possible violation of public policy in the application of the indemnity agreement in the instant case. To hold that a party cannot protect itself through indemnification or insurance against liability for its own negligent acts would not only do violence to well established authority to the contrary but would strip vast numbers of the protection accorded by such contracts. For example, such a holding would have the effect of denying the highly necessary insurance protection accorded in automobile liability insurance polices, which have for one, if not the most important, purpose the protection of the insured against the effects of his own negligence." 201 So.2d 168, 175.
In Freeman v. Department of Highways, 253 La. 105, 217 So.2d 166 (1968), a contractor claimed damages of the defendant, Department of Highways, for a breach of *825 contract. Plaintiff contended that the defendant violated its contract by causing certain inordinate delays which resulted in damages to plaintiff. The exculpatory "Delays-and-Extensions" clause was urged as a defense to plaintiff's action. The issue presented was whether it is against public policy for contracting parties to agree, in case one of them fails to timely perform a specified act and thus delays the other in the performance of his obligations, that the one who so fails to perform will not be held responsible for any damages caused by the delay. On rehearing, the court upheld the validity of the exculpatory clause and concluded that the defendant, Department of Highways, was exonerated from liability for damages caused by the delays of which the plaintiff complained. Therein the court observed:
"This case, as noted in our original opinion, was brought to this Court because of an asserted conflict between the decision herein of the Court of Appeal, First Circuit, and that of the Court of Appeal, Second Circuit, in Sandel & Lastrapes v. City of Shreveport, 129 So. 2d 620, which authority the First Circuit refused to follow. On first hearing, we found it unnecessary to discuss the Sandel case because of the interpretation give to the `Delays and Extensions' clause. Since we reject our previous interpretation, we feel obliged to determine whether the Sandel case is correct, and, if so, whether it is distinguishable from the case at bar." 217 So.2d 176.
In its discussion of the Sandel & Lastrapes case, supra, the Supreme Court noted in the Freeman case:
"On the facts found by the Court of Appeal on the merits of the case, we think it clear that the matter may be distinguished from the case at bar. However, it is true that, in considering an exception of no cause of action filed by the City, which was predicated on the provisions of Sections SC-6 and SC-15 of the contract, the Court of Appeal ruled that the exception was without merit because the exculpating clauses were contrary to public policy since they would permit a contractee `* * * to stipulate exemption from negligent acts which cause injury.' No authority is cited for this holding, and we know of none which supports the view that it is against public policy for contracting parties to agree that, in case one of them fails to perform a certain act timely and thus delays the other in the performance of his obligations, the former will not be held responsible for any damages caused by the delay. Accordingly, in this respect, we find that the Court of Appeal, First Circuit, was correct in refusing to follow the decision in the Sandel case." 217 So.2d 177.
As we appreciate it, the decision in the Freeman case disapproved or at least limited the broad statement made in Sandel to the effect that it is contrary to public policy for a contractee to stipulate exemption from negligent acts which cause injury.
A similar provision to the one involved in the instant case is found in the noteworthy cause of Shaer Shoe Corp. v. Granite State Alarm, Inc., 110 N.H. 132, 262 A.2d 285 (1970). The issue dealt with therein by the Supreme Court of the State of New Hampshire was whether an exculpatory provision in a water-flowage-alarm-system contract was valid. The pertinent language provided:
"... the Contractor shall be under no liability to the Subscriber for any such failure, except in the case of wilful default or negligence on the Contractor's part, and in such case its liability shall be limited to refunding the amounts theretofore paid by the Subscriber under this agreement." 262 A.2d 286.
The pertinent provision of the contract with which we are concerned in the instant *826 case is couched in similar language. In Shaer, the court held that although exculpatory contracts have been invalidated in cases involving special relationships such as landlord and tenant and common carriers, the rule does not prohibit all exculpatory contracts. The court held that no such special relationship existed in that case, each party was free to make his own bargain, and the clause limiting damages for negligence in the performance of the contract was valid.
It appears appropriate to emphasize that plaintiff's claim is not in any wise based upon any deliberate or willful tort of the defendant. Neither the contract nor the pleadings in this action disclose any misunderstanding of the risk involved or the consequences with respect to an exemption or limitation of liability from any negligent performance of any duty created by and arising out of the contract. Contracts may, and often do, differ with respect not only to the language and terms employed but as to subject matters to which they appertain, and are thus distinguishable. Nevertheless, parties are free to make their own contracts except in instances and under conditions inhibited by law, morals, or public policy. All exculpatory contracts are not ipso facto null and void.
The provisions of the contract in the instant case are not such as are prohibited under any of the aforesaid principles. Nor do we know of any reason why parties may not contract for unequal contingent penalties for the breach of a contract. The contract concerned here is clear and specific. Its observance will lead to no absurd consequences. Thus, it must be given effect. LSA-C.C. Art. 1945.
For the foregoing reasons, based upon the alleged facts of this case, we find no merit in plaintiff's contention that the exculpatory clause in the contract is null and void by reason of public policy.
The judgment appealed is accordingly affirmed at plaintiff-appellant's costs.