**DEVIN TOOL & SUPPLY COMPANY, INC., Plaintiff-Appellant Cross-Appellee,**

v.

**CAMERON IRON WORKS, INC., Defendant-Appellee Cross-Appellant.**

No. 85–4197.

United States Court of Appeals, Fifth Circuit.

March 10, 1986.

---

Vance R. Andrus, Lafayette, La., for plaintiff-appellant cross-appellee.

Randall C. Songy and Gary J. Russo, Lafayette, La., for defendant-appellee cross-appellant.

Before JOLLY and HILL, Circuit Judges, and HUNTER,[*] District Judge.

PER CURIAM:

In this diversity action plaintiff, Devin Tool & Supply Co., Inc. (Devin), appeals and defendant, Cameron Iron Works, Inc., cross-appeals from take nothing judgments of the District Court.

## DEVIN'S CLAIM AGAINST CAMERON

Devin, now a debtor in bankruptcy, acquired blow-out preventors (BOPs) for resale from Cameron and resold them to drilling contractors, rental tool companies and service companies. Plaintiff's practice was to order BOPs and other equipment for which it did not have firm orders, and then solicit and find buyers between the time of order and the expected date of delivery. Upon receipt of purchase orders from plaintiff, defendant prepared sales orders and mailed them to plaintiff. The sales orders described the blowout preventer and its specifications, stated a price (which was not regarded as firm by either party) and stated a promised delivery date. Printed on the back of each sales order were "Cameron's Standard Terms and Conditions of Sale" which constitute the main frame for disposition of this case:

"8. Promises of delivery are given as conditions permit and every effort will be made to make deliveries as scheduled. All shipping dates are based on receipt of a firm order with complete information contained therein. In addition, the shipping dates are based on standard quality control checks as a part of the normal production sequence. Additional inspection or testing required by purchaser which affects normal production sequence, will be considered as extending the shipping dates accordingly. Cameron assumes no liability for damages arising out of failure to deliver material as promised. Cameron assumes no liability for damages arising out of failure to deliver material as promised."

"9. Cameron shall not be liable for failure or delay in delivery due to acts of God, orders bearing priority rating established pursuant to law, differences with workmen, local labor shortages, flood or other casualty, governmental regulations or requirements, shortages or failure of raw materials, supplies, fuel, power or transportation, breakdown of equipment, or any other causes beyond Cameron's reasonable control, whether of similar or dissimilar natures than those enumerated. Cameron shall have such additional time in which to perform as may be reasonably necessary under the circumstances and shall have the right to proportion its production among its customers in such a manner as it may consider to be equitable. In no event shall Cameron be liable for any consequential damages or claims for labor resulting from failure or delay in delivery."

Beginning in 1980, defendant received orders for (BOPs) at a rapidly increasing rate. Cameron, hoping to meet this increase in demand, contracted to sell more BOP's than it ultimately had the capacity to produce. It simply could not meet its production schedule requirements. Thereupon, in an effort to deal with the problem, defendant gave priority to its customers in the following order: builders of drilling rigs, drilling contractors, major oil companies, foreign government controlled oil companies, rental tool companies, and pur-

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

chasers for resale. Devin was in the lowest priority and its delivery dates were thus postponed 1½ to over ·3½ years. Devin received no BOP's during the peak year of 1981 though he had contracted for twenty-four.

Cameron's rationale for its system of priorities is that it ("serv[ed] the nation's needs by channeling the limited supply of Cameron BOP's into the hands of those customers actually using the products for exploration and production.") Devin, skeptical of Cameron's goal to achieve energy independence points out that Devin's market was the same as Cameron's. Devin alleges that Cameron's failure to deliver timely BOP's originally scheduled for delivery during the period of peak drilling activity constituted an actionable breach of the sales contracts.

After a detailed bench trial, without reaching such issues as good faith or reasonableness, the district court found that Cameron's priority rating system was a "specific right accorded defendant by the terms and conditions of sale and when plaintiff elected to do business with defendant, it agreed to do so on those terms and conditions. It cannot now be heard to complain." Devin insists that the net result of the court's reading of the contract is that the last sentence of each paragraph 8 and 9 has been applied to excuse liability for delays in delivery under all circumstances and for all reasons and that all other language is ignored.

The basic issue is quite precise. Did the district court err as a matter of law in holding that paragraphs 8 and 9 of the terms and conditions listed on the backside of defendant's Sales Order forms fully excused all rescheduling decisions by Cameron, regardless of whether those decisions were reasonable, equitable and made in good faith?[1]

This circuit, in conformity with other circuits, has consistently held that the interpretation of a contract is a question of law,

not fact, and appellate review is not limited to the clearly erroneous rule. *Chevron v. Belco,* 755 F.2d 1151 (5th Cir.1985), *Strachan Shipping Company v. Dresser Industries,* 701 F.2d 483, 486 (5th Cir.1983), *City of Austin, Tex. v. Decker Coal Co.,* 701 F.2d 420 (5th Cir.1983).

■ The Louisiana jurisprudence reveals a strong public policy against unbargained-for disclaimers of warranties and against modifications of contracts through boilerplate collateral documents. But, the promise to deliver on a certain date is not a warranty implied by law; it comes into being through agreement by the contracting parties. *Benglis Sash & Door Co. v. Leonards,* 387 So.2d 1171 (La.1980), *Freeman v. Department of Highways,* 253 La. 105, 217 So.2d 166 (1968). Here, there was no agreement regarding delivery times prior to the acknowledgements sent by Cameron. The acknowledgement, insofar as it discusses delivery terms was not a document collateral to the parties' contract; it constituted an offer to deliver on a date with modifications.

The district court's opinion supports an implied finding that Devin accepted Cameron's offer to contract for delivery on these terms. It found that "[p]rior to the dramatic increase in drilling activity and consequent similar increase in demand in the blowout preventer market ... [Cameron] had extended promised delivery dates of blowout preventers and other equipment order by [Devin].... The contents of paragraphs 8 and 9 were well known to Devin. The district court was eminently correct in finding that these paragraphs were part and parcel of the parties' contract.

Devin advances four theories under which the trial court's interpretation of paragraphs 8 and 9 might be found erroneous: (1) the language, read as a whole, does not support the judge's conclusion, (2) the paragraphs give rise to an implied duty

---

1. Cameron states in a heading of its appellate brief that "Judge Duhe was correct in ruling that Devin had not proved it was damaged ..."

but during oral argument conceded that no such ruling was made.

of good faith breached by Cameron, (3) the paragraphs are ambiguous and the court should have considered extrinsic evidence which would have shown that there was no meeting of the minds concerning Cameron's right to arbitrarily delay delivery, and (4) the paragraphs are ambiguous and should be construed against the drafter. Cameron insists that only issue (1) is before this court. It argues that issues (3) and (4) were not raised at trial and that issue (2), while raised at trial was not raised in the complaint. Certainly issue (2) is properly before this court. Plaintiff stated in its complaint that Cameron breached its duty to timely deliver. This language gives notice that the plaintiff might proceed on a theory that the duty breached was implied. Because of our resolution of the primary issues raised by appellant, we do not address issues 3 and 4.

We are obliged to give legal effect to written contracts according to the true intent of the parties and this intent is to be determined by words of the contract when these are clear, explicit and lead to no absurd consequences. La.C.C. Art. 2046 (1985). The meaning and intent of the parties in such cases must be sought from the four corners of the lease agreement and cannot be explained or contradicted by parol evidence. *Quintana Petroleum Corporation v. Alpha Inc., Corp.*, 435 So.2d 1092 (La.App.1983).

Louisiana Codal provisions (1985) pertinent here are:

Art. 2045. Interpretation of a contract is the determination of the common intent of the parties.

Art. 2046. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent.

Art. 2048. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.

Art. 2049. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.

Art. 2050. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

Art. 2053. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.

Art. 2056. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its test. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.

Paragraphs 8 and 9 contain both a general disclaimer of liability for untimely deliveries and an enumeration of circumstances that would relieve Cameron from liability. Even if we give exclusive effect to the particularized disclaimers as Devin urges, Cameron's overbooking is excused. Paragraph 9 states: "Cameron shall not be liable for ... local labor shortages, ... shortages or failure of raw materials...." The record reveals that it had planned to expand its facilities in order to meet customer demand and that its efforts to expand plant capacity were thwarted by a lack of trained machine operators, excessive lead times on machine tools, and inadequate sources of raw materials. The district court's determination that Cameron "simply could not meet its production schedule requirements" and that rescheduling was necessary is clearly correct.

With respect to Devin's argument that Cameron's rescheduling priorities were wrongful, we cannot ignore the following sentence contained in paragraph nine: "Cameron shall have such additional time within which to perform as may be reasonably necessary under the circumstances and shall have the right to apportion its production among its customers in such a manner as it may consider equitable."

This clause creates an express duty by Cameron to implement a rescheduling plan that was "reasonable" and "equitable" with respect to Devin. Louisiana law certainly requires a duty of good faith on the part of Cameron to do just that. The language utilized by the Louisiana Supreme Court in the National Safe Case "hits the nail on the head." [2] Articles 1903 and 1965 of the Louisiana Civil Code referred to there have been recodified (in the year 1985) as Articles 2054 and 2055.

■ We categorically reject the district court's conclusion that Cameron possessed an unqualified immunity from liability for untimely delivery. We remand to the district for a factual determination of whether Cameron's rescheduling priorities were reasonable, equitable and made in good faith.[3] If the district court answer is yes, then that terminates the inquiry. If the answer is no, then the district court is required to ascertain the amount of damages, if any, sustained by Devin as a result of the breach of good faith. We express no opinion, not even a whisper, as to the merits of these issues.

## CAMERON'S CLAIM AGAINST DEVIN

The boom of 1980 and 1981 was followed by a bust in late 1981. Devin, having no market for the BOP's cancelled many of its orders. After Devin brought suit, Cameron counterclaimed, seeking to take advantage of paragraph 3 on the back of its Acknowledgement:

3. Purchase orders once placed and accepted can be cancelled only with Cameron's written consent and upon terms which will save Cameron from loss. No goods may be returned for credit or adjustment without written permission from Cameron's home office.

■ The district court found that this contractual provision entitled Cameron to "actual losses," not to customary cancellation changes. Finding that there was a "total absence of evidence as to the loss, if any, which would be suffered by Cameron as a result of the cancellation," recovery was denied. The record fully supports this finding and the district court's order concerning Cameron's counterclaim is affirmed.

## CONCLUSION

We affirm the district court's dismissal of Cameron's counterclaim. We reverse and remand the dismissal of plaintiff's

2. See *National Safe Corp. v. Benedict and Myrick, Inc.*, 371 So.2d 792 (La.1979);

Article 1901 of the Civil Code requires good faith performance of all agreements. A principle of implied obligations in contracts is also stated in Art. 1903 of the Code in these words: 'The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect.' The effect of equity on implied obligations is expressed in Article 1964 in these terms: 'Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.' Insofar as pertinent here, the 'equity intended by this rule is founded in the christian principal not to do unto others that which we would not wish others should do unto us. . . .' La.Civil Code art. 1965.

From these pronouncements we are reminded that not all obligations arising out of contract need be explicitly stated. Into all contracts, therefore, good faith performance is implied. Furthermore, everything that by equity is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements. And, as Article 1964 of the Civil Code makes clear, equity will supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from that source.

It is evident from the principles announced in the Code that contracts are to be understood, not only from what is expressed, but also everything that by law, equity or custom is considered as incidental to the particular contract, or necessary to carry it into effect.

3. Appellant argues, we think, compellingly that the inclusion of enumerated examples of circumstances which would excuse Cameron from liability, all of which were consistent with a duty of utmost good faith, give rise to an inference that the parties understood that Cameron's right to reschedule as it "consider[ed] equitable" was limited by a duty of good faith.

claim for further proceedings consistent with this opinion.[4]

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

4. During oral argument, counsel indicated these issues could be resolved upon the record. The district court may, but need not open for additional evidence.