442 So.2d 796 (1983)
CARRIAGE MEAT COMPANY, INC.
v.
HONEYWELL, INC. d/b/a Honeywell Protection Services.
No. CA-0676.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1983.
*797 Warren J. Pickle, New Orleans, for appellant.
Michael J. Furman, New Orleans, for appellee.
Before GULOTTA, REDMANN, LOBRANO, BYRNES and WILLIAMS, JJ.
GULOTTA, Judge.
Carriage Meat Company, Inc. (Carriage) appeals from the dismissal, by summary judgment, of its suit for losses resulting from meat spoilage caused by the failure of a temperature monitoring system in Carriage's meat freezer. Defendant Honeywell, Inc., d/b/a Honeywell Protection Services (Honeywell), installed the system in the freezer and monitored it at Honeywell's central station.
According to the petition, on the morning of Monday, April 27, 1981, Carriage discovered that its freezer was not operating and that the contents had spoiled over the prior weekend. Carriage alleged Honeywell's "gross negligence" in failing to alert plaintiff of the triggering of the alarm indicating a breakdown in the freezer. Damages were sought in excess of $71,000.00.
Honeywell filed a motion for summary judgment seeking to limit its liability to a maximum of $342.00 based on its contract with Carriage. Attached to the motion was an affidavit of Honeywell's branch manager stating that a protection service contract had been entered into between the parties. A copy of said contract was annexed to the affidavit.
In maintaining defendant's motion for summary judgment, the trial judge relied on the following language in the "INSTALLATION AND SERVICE AGREEMENT" between the parties:
"It is understood and agreed by the parties hereto that Contractor [Honeywell] is not an insurer and that insurance, if any, covering personal injury and property loss damage on Subscriber's [Carriage's] premises shall be obtained by the Subscriber; that the Contractor is being paid for the installation and maintenance of a system designed to reduce certain risks of loss and that the amounts being charged by the Contractor are not sufficient to guarantee that no loss will occur; that the Contractor is not assuming responsibility for any losses which may occur even if due to Contractor's negligent performance or failure to perform an obligation under this Agreement. THE CONTRACTOR DOES NOT MAKE ANY REPRESENTATION OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS, THAT THE SYSTEM OR SERVICE SUPPLIED MAY NOT BE COMPROMISED, OR THAT THE SYSTEM OR SERVICES WILL IN ALL CASES PROVIDE THE PROTECTION FOR WHICH IT IS INTENDED.
"Since it is impractical and extremely difficult to fix actual damages which may arise due to the faulty operation of the system or failure of services provided, if, notwithstanding the above provisions, there should arise any liability on the part of the Contractor, such liability shall be limited to an amount equal to one half the annual service charge provided herein or $250, whichever is greater. This sum shall be complete and exclusive and shall be paid and received as liquidated damages and not as a penalty. In the event that the Subscriber wishes to increase the maximum amount of such liquidated damages, Subscriber may, as a matter of right, obtain from Contractor *798 higher limits by paying an additional amount under a graduated scale of rates relating to the higher limits of liquidated damages."
Carriage contends that Honeywell's apparent failure to monitor its detection equipment (or some similar failure) over an entire weekend constitutes a "blatant disregard of its contractual duty", and, under such circumstances, the exculpatory provision of the contract is not applicable.
Honeywell, on the other hand, relies on this court's opinion in Lazybug Shops, Inc. v. American Dist. Telegraph, 374 So.2d 183 (La.App. 4th Cir.1979), writ denied 376 So.2d 1271 (La.1979), where, following the failure of a burglar alarm system, we upheld the validity of an exculpatory and limitation of liability clause similar to the one in the Honeywell-Carriage contract. Honeywell relies also on Alan Abis, Inc. v. Burns Electronic Security Serv., Inc., 283 So.2d 822 (La.App. 2nd Cir.1973), also involving a defective burglar alarm system, where the Second Circuit held that contracts of this nature were not in violation of public policy and applied the exculpatory provisions of the contract.
Although we recognize the holdings in Lazybug and Alan Abis, we conclude that the allegations in the petition in our case distinguish the instant case from those cited.
Carriage's petition alleges not that the monitoring system failed, as in Lazybug and Alan Abis, but that the monitoring system indicated a freezer malfunction for many hours and that Honeywell personnel had failed to notify Carriage. Plaintiff's petition states:
"That, at no time prior to Carriage's discovery of the freezer's breakdown did Honeywell attempt to contact Carriage or any of its designated agents so as to alert them of the problem. That failure of Honeywell to alert Carriage of the alarm system being triggered represents gross negligence on the part of Honeywell for which Honeywell is liable to Carriage for all losses sustained pursuant thereto."
When we consider these allegations together with the pertinent contract provisions, as well as the jurisprudence, we are led to conclude that the trial judge erred in dismissing plaintiff's suit by summary judgment.
By its own terms, the contract exculpates Honeywell from liability for any losses, even if due to its "... negligent performance or failure to perform an obligation...." It is clear that this language does not include willful failure to monitor the system or other deliberate disregard of a contractual duty.[1]
Despite the exculpatory provision, the agreement states that Honeywell will provide protection services in the nature of a "central station supervised transmitter" and a "transmitter for temperature supervision." A willful failure to monitor this system or a deliberate disregard of a contractual duty would not be consistent with the intended protection service set forth in the contract. Accordingly, if Honeywell furnished no personnel who monitored the system, or if personnel failed to notify plaintiff during many hours of the alarm's being triggered, liability might well be imposed irrespective of the exculpatory clause.
Our consideration of the pertinent allegations of the petition, undisputed by defendant's motion for summary judgment, leads to a conclusion that the assertions are tantamount to a claim that Honeywell's failure was either willful or a deliberate disregard of its contractual duty. If Carriage proves only simply negligence at a trial on the merits, the contractual limit of liability would apply.
Consistent with the foregoing, we hold that the trial judge erred in maintaining Honeywell's motion for summary judgment and dismissing plaintiff's suit. Accordingly, that judgment is reversed and set aside, and the matter is remanded to the trial *799 court for further proceedings. Costs to await the outcome of the litigation.
REVERSED AND REMANDED.
NOTES
[1] For a discussion of gross negligence vis a vis a limitation of liability clause, see FMC Corp. v. Continental Grain Co., 355 So.2d 953 (La.App. 4th Cir.1977), on application for rehearing.