508 So.2d 966 (1987)
BANNER CHEVROLET, et al.
v.
WELLS FARGO GUARD SERVICES, et al.
No. CA-6999.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1987.
Michael D. Carbo, Adams and Reese, New Orleans, for defendants-appellants.
Sidney J. Angelle, Lobman and Carnahan, Metairie, for plaintiffs-appellees.
Before CIACCIO, WARD and WILLIAMS, JJ.
WARD, Judge.
Banner Chevrolet contracted with Wells Fargo Guard Services for security services at Banner's car dealership on Chef Menteur Highway in New Orleans. While this contract was in effect, during business hours on June 6, 1983, a car was stolen from Banner's service department. The vehicle was recovered the following day but had sustained damage which Banner repaired at a cost of $411.89. Additionally, Banner paid $245.56 to the car's owner to rent another automobile while his was being repaired. Banner's insurer, Bellefonte Underwriters Insurance Company, partially paid for Banner's losses, and exercising its subrogation rights, joined Banner in suing Wells Fargo for the cost of repairing the car and the rental expense. Wells Fargo appeals from a judgment in favor of Banner Chevrolet and Bellefonte Underwriters Insurance Company for $657.45.
Wells Fargo contends that the Trial Court erred in failing to apply the following limitation of liability clause contained in the contract between the parties to relieve Wells Fargo of liability.
8. LIABILITY: It is understood that Wells Fargo is not an insurer; that insurance shall be obtained by Client, if any is desired; that the sums payable hereunder to Wells Fargo by Client are based upon the value of services offered and scope of liability undertaken, and such sums are not related to the value of Client's interest protected or of property belonging to Client or to others located on Client's premises. While Wells Fargo will do its best to protect the assets and employees of Client, Wells Fargo makes no warranty, express or implied, that the services it furnishes will avert or prevent *967 occurrences, or the consequences therefrom, which may result in loss or damage to the Client. Client agrees that Wells Fargo shall not be liable for any of Client's losses or damages, irrespective of origin, to person or to property, whether directly or indirectly caused by performance or nonperformance of obligations imposed by this Agreement or by negligent acts or omissions of Wells Fargo, its agents or employees.
A party may legally contract with another party to exclude liability for his negligence if the exculpatory agreement clearly expresses that intent. Rhodes v. Congregation of St. Francis, 476 So.2d 461 (La.App. 1st Cir.1985). As long as one's negligence does not cause physical injury to another, contractual provisions are valid to eliminate completely or to partially limit liability for losses due to negligence, but not for losses caused by intentional acts or gross fault. La.C.C. art. 2004; Carriage Meat Co. v. Honeywell, Inc., 442 So.2d 796 (La.App. 4th Cir.1983). The question to be resolved in this appeal is, therefore, whether the actions of Wells Fargo were mere negligence for which Wells Fargo is not liable or whether the actions amounted to intentional misconduct or gross fault which would be outside the scope of the exculpatory clause.
Wells Fargo argues that the conduct of its employee was at worst simple negligence and that the proximate cause of the theft was the negligence of Banner employees. Relying on Carriage Meat, supra, Haspel v. Rollins Protective Services, Inc., 490 So.2d 530 (La.App. 4th Cir.1986), and Lazybug Shops, Inc. v. American District Telegraph Co., 374 So.2d 183 (La.App. 4th Cir.), writ refused, 376 So.2d 1271 (La. 1979), Wells Fargo contends the exclusionary clause is applicable to this case.
Banner responds that the Trial Court correctly held Wells Fargo liable because its fault was gross negligence, greatly below the applicable standard of care, and the exculpatory clause therefore has no effect. Banner further contends that Haspel and Lazybug Shops, cited by Wells Fargo, are distinguishable from the present case.
Banner argues that those cases involved exculpatory clauses which were clear and unambiguous, whereas the clause in the instant case is unclear because of the language that Wells Fargo "... will do its best to protect the assets and employees of the client." Ambiguous provisions should be construed against the party that prepared the agreement. Kenner Industries, Inc. v. Sewell Plastics, Inc., 451 So.2d 557 (La.1984). Wells Fargo drafted the contract at issue here. Therefore, Banner asserts that Wells Fargo had to do its best to protect the client's property before the exculpatory clause applies. Banner argues the "do its best" clause was a condition precedent to the application of the exculpatory provisions, otherwise Wells Fargo could escape liability even if its employees did nothing to protect Banner.
The record before us shows that at the time of the theft from Banner's premises, access to the parking lot adjoining the service department was regulated by a wooden railroad crossing type arm which was raised to permit cars to enter and exit. Beyond this arm was a gate in the chain link fence surrounding the lot which could be folded open like an accordian. Normally, only one of the two sections of the gate was kept open so that the crossing arm blocked the opening in the fence. The gate when half open was kept in place by a 4-by-4 timber so that it would not swing into a fully open position which would leave a gap between the end of the crossing arm and the gate through which a car could be driven. During business hours, gate control was the responsibility of a Wells Fargo employee posted in a gatehouse who kept a log of vehicles leaving the premises and who raised the crossing arm to permit entry and exit. About three hours before the theft, Banner employees had removed the timber which held the gate closed, and the timber had not been replaced. The thief was thus able to drive through the open gate and around the end of the crossing arm.
On the day of the theft, Melanie Smith was the Wells Fargo employee in charge of gate control. Her report of the incident *968 states that the unknown thief walked up to her and asked for "Dennis." Smith replied, "Dennis who?" but the thief did not respond and walked on. Approximately thirty minutes later, having found an unattended car in the service department with the keys inside, the thief sped off the lot. Smith reported the theft to her Wells Fargo supervisor who instructed her to call the police.
In determining whether Wells Fargo should be liable for Banner's loss, we emphasize that this case is a claim for damages due to a breach of the contract for security services, and that the defense is denial of breach because a provision of the contract expressly denies that Wells Fargo will be liable for negligent acts of employees. This is not a negligence claim for damages; Wells Fargo's obligations are determined by the terms of the contract, not by the law of negligence. Accordingly, the question is whether the conduct of Wells Fargo's employee constitutes a breach of Wells Fargo's obligation to provide security services or whether the exculpatory clause allows Wells Fargo to avoid financial responsibility for the loss even though caused by negligent acts or omissions of its employee.
The evidence produced at trial established that Melanie Smith failed to properly carry out her gate control duties. Although it was Banner employees who moved and carelessly failed to replace the timber which held the gate closed, Smith was at her post, only a few feet from the gate and the misplaced timber, for three hours while the gate stood open, and she did not close the gate and replace the timber. Additionally, Smith was aware of the presence of an unauthorized individual on Banner's premises for approximately thirty minutes before the theft and did nothing to alert other security personnel or Banner employees. On this record, the Trial Judge correctly found that the conduct of the Wells Fargo employee fell below the standard of conduct for security guards. Clearly, the Wells Fargo employee was negligent.
We do not, however, agree with the Trial Judge's conclusion that the negligence constitutes a breach of the contract for security services, and we hold that the exculpatory clause is effective to relieve Wells Fargo of liability for damages. The clause to which Banner agreed plainly provides that Wells Fargo is not to be liable for losses "irrespective of origin ... whether directly or indirectly caused by performance or nonperformance of obligations ... or by negligent acts or omissions...." The facts surrounding Banner's loss indicate that it is within the terms of this clause and therefore Wells Fargo is not liable. We decline to hold as Banner urges that the "do its best" phrase in the exculpatory clause is a condition precedent to the application of the clause. All contracts must be performed in good faith, and in our opinion good faith performance implies that an obligor will do his best. Accordingly, express inclusion of the promise to do one's best in the performance of a contract adds nothing to the contractual undertaking, and we will not interpret the phrase to mean that the exculpatory clause has no effect if Wells Fargo fails to do its best.
Accordingly, the judgment of the Trial Court is reversed. All costs to be paid by the parties jointly.
REVERSED.