RSCHOTT, Chief Judge.
This appeal is by plaintiff from a summary judgment in favor of Convention Security Services, Inc. (CSS) dismissing plaintiffs suit. The issue is whether there are genuine issues of material fact which preclude summary judgment. We affirm.
Plaintiff and defendant, Masonry Expo, entered into a contract on December 6, 1995, whereby Masonry Expo agreed to rent plaintiff exhibit space at a masonry convention held on January 27-29, 1996 at the New Orleans Convention Center. Plaintiff paid Masonry Expo the rental charge of $1,950.00. Pursuant to this contract, Masonry Expo forwarded to plaintiff an Exhibitor Service Manual (Manual) which provided exhibitors with information regarding setting up and dismantling procedures and times.
The Manual provided that exhibitors were not allowed to dismantle their exhibits until the end of the show at 2:00 PM, Monday January 29. The hours of teardown were as follows:
Monday, January 29 2:00 PM — Midnight
Tuesday, January 30 8:00 AM — Midnight
1 ¡¡The Manual further provided that all merchandise “carried from the exhibit area must be accompanied by a Merchandise Release Pass.”
In addition to its contract with plaintiff, defendant, Masonry Expo, contracted with codefendant, Convention Security Services, Inc .(CSS) for security services for the duration of the convention. Plaintiff was not a party to this contract, as neither was CSS a party to the rental agreement between plaintiff and Masonry Expo.
Plaintiff set up its exhibit on January 26, 1996. Included in its wares were several industrial pressure washers and accessories. Plaintiffs representatives were on-site during the convention hours and remained at the exhibit until 2:00 PM, January 29, 1996. At approximately 11:00 AM the following day plaintiffs representatives returned to the exhibit hall to dismantle their exhibit and remove the equipment. At that time they discovered that some of their equipment had been stolen.
Plaintiff sued both defendants alleging that as a result of breach of contract and negligence on their part plaintiff sustained damages for the loss of the items lost; and loss of profits.
Masonry Expo and CSS filed separate motions for summary judgment contending that they were contractually insulated from liability for plaintiffs alleged loss. The judgment was signed in favor of Masonry Expo on August 15,1997, but the judgment in favor of CSS was not signed until October 8, 1997. Plaintiff failed to take the appeal from the judgment in favor of Masonry Expo within the ten day period provided by LSA-CCP art. 5002 and that appeal was | ¿dismissed. Thus, we are concerned only with the appeal from the summary judgment in favor of CSS.
*745 Plaintiff had no contract with CSS. Its only contract was with Masonry Expo, and that contract contained the following provision:
Each exhibitor has the responsibility of safeguarding its own exhibit materials or goods from the time they are placed in the exhibit space until they are removed. The exhibitor agrees to make no claim against Masonry Expo or any of the sponsoring organizations, agents or employees on account of loss occasioned by fire, accident, theft, storm, or damage from negligence. ...
In brief to this court plaintiff argues that this provision was on the second page “in extremely small type” and not “printed in normal and/or large-size type” and was, therefore, somehow not binding. The first page of the contract clearly proclaims in print or type which plaintiff apparently concedes is normal: “The rules and regulations on the reverse side hereof shall constitute part of this contract and the exhibitor agrees to abide and conform thereto.” Thus, plaintiff signed a contract which was clear and unambiguous, was not susceptible to explanation or clarification by parol testimony and provided that plaintiff was responsible for its own property. Consequently, it has no right to impose legal liability on someone else for its failure to take care of its own property.
However, we are not even concerned here with a ease against Masonry Expo but with a case against CSS. Plaintiff had no contract with CSS. Nevertheless, plaintiff argues that CSS was responsible for the enforcement of conditions which were included in the Exhibitor Service Manual provided by Masonry Expo. These conditions included the prohibition against the lending of badges among employees and customers of exhibitors, the requirement for proper identification in | .morder to secure a badge, the hours and times for tear-down of exhibits, and the following requirement:
Merchandise Release Passes:
All merchandise carried from the exhibit area must be accompanied by a Merchandise Release Pass. Passes can be obtained by showing your exhibition credentials at the Exhibitor Registration Desk.
Plaintiff argues that CSS was charged with the responsibility of enforcing these conditions and its failure to do so caused the loss of plaintiffs property.
The contract between Masonry Expo and CSS was a narrow one which obliged CSS to provide a specified number of security guards for the exhibit. It contained the following provision:
Responsibility:
Convention Security Services is not responsible for the loss, theft, or damages to the property of an individual exhibitor. CSS is responsible for controlling admission to the exhibit floor, meetings or sessions as required by Show Management.
In support of its motion for summary judgment CSS filed the affidavit of its President who stated that Masonry Expo required CSS only to check the badges of people coming in and out while the show was being dismantled but not to check each item being removed as it would have been impractical to do so.
The cases cited by plaintiff, Carriage Meat Co. v. Honeywell, Inc., 442 So.2d 796 (La.App. 4 Cir.1983) and Tony’s Auto Parts, Inc. v. Honeywell, Inc., 522 So.2d 680 (La.App. 5 Cir.1988) do not support its position. In the first place in each case the plaintiff had a contractual relationship with the defendant. Each was a customer of the defendant and was suing for a breakdown of the alarm services sold by the defendant. In the present case plaintiff has no contractual relationship with CSS. Furthermore, the courts in the cited cases, held that the ^contractual limitations of liability would apply absent a showing of willful or deliberate disregard by the defendant of its contractual duty. In the present case plaintiff did not allege that CSS acted in willful or deliberate disregard of its contractual duties but it alleged only that CSS acted negligently in permitting the equipment to be removed. Furthermore, in response to an interrogatory propounded to it by Masonry Expo, plaintiff stated that it was not making a claim for “gross fault.”
The summary judgment here is supported by Banner Chevrolet v. Wells Fargo Guard Services, 508 So.2d 966 (La.App. 4 Cir.1987). In that case, Banner, a car dealership, brought a breach of contract action against *746 Wells Fargo for damages Banner incurred as the result of an auto theft from the dealer’s service department, for which Wells Fargo had provided security. In determining whether or not Wells Fargo was liable for Banner’s loss, this court emphasized that the ease was one for a breach of contract and the defense for such was a limitation-of-liability clause. Id., at 968. Because it was not a negligence claim for damages, the court looked to the contract between the two parties to determine if the duty Wells Fargo owed to Banner encompassed the theft. In upholding the limitation-of-liability clause this court found that although the guard was negligent in failing to carry out her duties, such an action did not give rise to a breach of contract. Id. Similarly the limitation-of-liability clause in CSS’s contract is enforceable, and thus no breach of contract claim would exist. We hasten to add that Banner at least had a contract with Wells Fargo whereas plaintiff had none with CSS.
The judgment appealed from is affirmed.

AFFIRMED.