634 So.2d 969 (1994)
ROSENBLATH'S, INC., Plaintiff-Appellee,
v.
BAKER INDUSTRIES, INC. and Baker Protective Services, Inc., Defendants-Appellants.
No. 25685-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1994.
Didriksen & Carbo by Michael D. Carbo, Denise A. Bostick, New Orleans, for defendants-appellants.
Stone, Pigman, Walther, Wittmann & Hutchinson by Phillip A. Wittmann, Douglas D. Dodd, S. Ann Saucer, New Orleans, for plaintiff-appellee.
Before NORRIS, LINDSAY and STEWART, JJ.
STEWART, Judge.
Rosenblath's men's clothing store filed suit against Baker Industries, Inc. and Baker Protective Services, Inc.[1] (hereinafter referred to as Wells Fargo, the name under which defendants operated), for damages arising from a burglary to which Wells Fargo *970 had ineffectively responded. The trial court rendered judgment in favor of Rosenblath's, and awarded damages for the loss incurred which exceeded the amount paid by Rosenblath's insurer. Wells Fargo appeals the trial court judgment, asserting as error the determination that its actions in responding to the business burglary constituted gross negligence. Rosenblath's answers, asserting that the trial court erred in deducting its insurance recovery from the total assessed against Wells Fargo. Finding no error in the trial court judgment, we affirm.

FACTS
Rosenblath's retail store in Shreveport, Louisiana was burglarized on September 5, 1983. The burglar(s) gained access to the store through the rear entrance. Rosenblath's[2] sued Baker Industries, Inc. and Baker Protective Services, Inc. (hereinafter referred to as Wells Fargo, the name under which defendants operated), for damages arising from the burglary.
Evidence showed that Patrolman Best responded to the alarm, checked the front entrance and windows and looked into the store, and radioed to the dispatcher that the building was secure. Best knew that the store had a rear entrance, but believed this entrance to be blocked or otherwise inaccessible due to construction on the Louisiana Tower behind Rosenblath's. He did not check whether the rear entrance either was blocked or breached. Best testified that had he known there was an alley behind Rosenblath's, he would have checked it. While Best was at the store, the dispatcher called the owner, Mr. Rosenblath, and assured him that although the alarm had sounded, it was not necessary for him to go to the store because the building appeared to be secure. The following day, Rosenblath found the interior of the store a disaster. More than $50,000 in merchandise had been stolen. The burglars had entered through the back door of the building. The motion detectors, which were maintained by Wells Fargo, were inoperable and had not signaled any movement.
The trial court found gross negligence on the part of Wells Fargo because, upon responding to an alarm at Rosenblath's, the Wells Fargo patrolman, Mr. Best, (1) failed to check the rear entrance of the store and (2) reported the premises secure. The trial court rendered judgment in favor of Rosenblath's and against defendant in the amount of $63,592.19, plus interest and costs. In its written opinion, the trial court arrived at the $63,592.19 figure after deducting the amount paid by Rosenblath's insurer because Rosenblath had assigned his rights to collect amounts paid by the insurer.
Defendant, Wells Fargo, appeals the trial court judgment, asserting that as a matter of law, these facts do not constitute gross negligence. Rosenblath's answers the appeal, contending that the trial court erred in deducting the amount paid by the insurer because the alarm protection agreement ("the contract") provides that no insurer will have the right of subrogation against Wells Fargo.

DISCUSSION
Was Wells Fargo Grossly Negligent?
The Wells Fargo patrolman, Mr. Best, checked the front of Rosenblath's, looked inside the front windows and concluded the store was secure. He knew of a back entrance to the store from the alleyway between Edwards and Market streets, but did not check it because he believed it was blocked due to construction. It was not, in fact, blocked, and the store was subsequently burglarized. Mr. Best testified as follows:
BY [Plaintiff's Counsel]:
Q. [Defense counsel] asked you would you have checked this alleyway if you had known it was there. In fact, if you had simply driven around the block, you could have seen that the alley was there, isn't that correct?
A. Sure.

*971 Q. But as I understood your testimony, you never once drove around the block during the entire time you were there.
A. That's correct.
Q. But did you drive back down Texas Street again later that night?
A. I stayed downtown most of the nightor most of the day that day.
Q. And during the entire time that you were downtown on September 5th, you never once drove down Edwards Street or Market Street?
A. I'm sure I came down Market Street, but never down Edwards Street, no, sir.
Q. Did you ever check the alley?
A. No, sir.
The trial court found that the Wells Fargo employee was guilty of gross negligence, which could not be waived by the contract.
The sole issue before this court is whether the trial court properly determined that these facts constitute gross negligence by Wells Fargo. The parties do not dispute the validity of the limitation of liability clause, which provides as follows:
16. CONTRACTOR NOT AN INSURER AND LIQUIDATED DAMAGES. It is understood that Contractor is not an insurer, that insurance, if any, shall be obtained by the Subscriber and that the amounts payable to Contractor hereunder are based upon the value of the services and the scope of liability as herein set forth and are unrelated to the value of the Subscriber's property or the property of others located in Subscriber's premises. The Contractor makes no guaranty or warranty including any implied warranty of merchantability or fitness, that the system or services supplied will avert or prevent occurrences or the consequences therefrom, which the system or service is designed to detect. The Subscriber does not desire this contract to provide for full liability of Contractor and agrees that Contractor shall be exempt from liability for loss or damage due directly or indirectly to occurrences or consequences therefrom, which the service is designed to detect or avert, that if Contractor should be found liable for loss or damage due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to ten percent (10%) of the annual service charge or $250.00, whichever is the least, as liquidated damages and not as a penalty, as the exclusive remedy, and that the provisions of this paragraph shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from performance or nonperformance of the obligations imposed by the contract or from negligence, active or otherwise of Contractor, its agents or employees.
However, the parties also agree that this clause does not apply to acts or omissions which constitute "gross negligence." Specifically, defendant-appellant, Wells Fargo, correctly states in brief that "[t]he effect of an exculpatory clause, however, is limited to those instances where the party seeking to exculpate or limit its liability is guilty of ordinary negligence." Thus, if the conduct of Wells Fargo constituted gross negligence, then the exculpatory clause does not apply to relieve it from liability under the contract.
At issue is whether the exculpatory clause is applicable, rather than whether it is valid. Wells Fargo concedes that its actions were negligent but contends that the contract's limitation of liability clause applies to bar judgment against it because its negligent actions did not rise to the level of gross negligence. Rosenblath's, however, asserts that the trial court correctly determined that the contract's liability limitation does not apply because Wells Fargo's acts and omissions constituted gross negligence. For the following reasons, we agree with the trial court's finding of gross negligence.
The contract neither refers to nor defines "gross negligence." The contractual limitation from liability for damages occasioned by negligence is inapplicable for damages resulting from gross negligence. "Gross negligence" is a delictual term. The distinction between negligence and gross negligence, in the context of liability for contractual damages arising from tortious acts, has not been well defined in Louisiana law. In the Civilian tradition, we look first to the expressions *972 of the legislature, the primary source of law in Louisiana, to determine whether the legislature has given this term any common and approved usage or "peculiar and appropriate" meaning. See and compare, Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1334 (La.1978).
Words and phrases are read in context and are construed according to the common and approved usage of the language. LSA-R.S. 1:3. Where the meaning of a legal term such as this is unclear, the meaning may be sought by examining the context with which the ambiguous term may be compared, in order to ascertain its true meaning. See Article 16 of the Louisiana Civil Code of 1870 (applicable at the time of the instant facts). Terms which have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning. LSA-R.S. 1:3. The following current statutory definitions of gross negligence are drawn from various areas of the law and provide a point of comparison to examine the generally prevailing, and/or technical, meaning of gross negligence: LSA-R.S. 6:2(8):
"Gross negligence" means a reckless disregard of, or a carelessness amounting to indifference to, the best interests of the corporation or the shareholders thereof, and involves a substantial deviation below the standard of care expected to be maintained by a reasonably careful person under like circumstances.
LSA-R.S. 6:703(9) and 6:1191(A)(2):
"Gross negligence" means a reckless disregard of, or a carelessness amounting to indifference to, the best interests of the financial institution or the shareholders thereof, and involves a substantial deviation below the standard of care expected to be maintained by a reasonably careful person under like circumstances.
LSA-R.S. 13:5108.2(B):
In the case of a contract or assigned physician, gross negligence is an act or omission in gross deviation from the standard of care required to be proven under provisions of R.S. 9:2794.
LSA-R.S. 51:2155(A):
[T]he term "gross negligence" shall mean the exercise of so slight a degree of care as to justify the belief that there was an indifference to the particular work of fine art.
Thus, we see that the legislature has defined "gross negligence" as "reckless disregard," or "careless indifference," which may involve a gross or substantial deviation from an expected or defined standard of care.
Louisiana jurisprudence also has struggled for a singular definition of gross negligence. For example, in Ambrose v. New Orleans Police Department Ambulance Service, 627 So.2d 233, 243 (La.App. 4th Cir.1993), the court observed that
"Gross negligence" has been defined as "the want of even slight care and diligence" or the "want of that diligence which even careless men are accustomed to exercise." State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942). It is "the entire absence of care" or the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." Hendry Corp. v. Aircraft Rescue Vessels, 113 F.Supp. 198 (E.D.La.1953).
It has been said that gross negligence involves conduct which falls far short of knowledge to a substantial certainty of harmful consequences. See Williams v. Gervais F. Favrot Co., Inc., 573 So.2d 533, 542 (La.App. 4th Cir.1991), writ denied, 576 So.2d 49 (La. 1991). Gross negligence requires no intent. Ciambotti v. Decatur-St. Louis, Lupin, Properties Ventures, 533 So.2d 1352, 1358 (La.App. 3d Cir.1988). Thus, the prevailing meaning, as defined by the legislature and the courts of this state, falls somewhere in the range between ordinary negligence and intentional conduct.
Wells Fargo strenuously argues that, under Banner Chevrolet v. Wells Fargo Guard Services, 508 So.2d 966 (La.App. 4th Cir. 1987), the instant conduct of Mr. Best cannot be deemed gross negligence. However, for the following reasons, we do not find Banner controlling. In Banner, our brethren of the fourth circuit stated that the trial court correctly *973 found that the conduct of the Wells Fargo employee fell below the standard of conduct for security guards. Nevertheless, they reversed the trial court's judgment against Wells Fargo because they did not agree with the trial court's conclusion that the negligence constituted a breach of the contract for alarm protection services. The Banner court held that the exculpatory clause was effective to relieve Wells Fargo of liability. The exculpatory clause in Banner differs from that in the instant case, and the Banner opinion does not directly address the issue of what constitutes gross negligence. For these reasons, we are not persuaded by Wells Fargo's argument that the Banner reasoning or analysis, if applied to the instant facts, would yield a reversal of the instant trial court judgment.
The Louisiana statutes and cases generally define gross negligence as conduct which falls below that which is expected of a reasonably careful person under like circumstances, or which is less than that diligence which even careless men are accustomed to exercise. Gross negligence is also "reckless disregard" or "careless indifference," and may involve a gross or substantial deviation from an expected or defined standard of care. Wells Fargo asserts that gross negligence is (1) a willful or deliberate disregard of contractual duty in cases involving alarm systems, and (2) conduct that shocks the conscience or that falls greatly below the standard of care appropriate under the circumstances.
Wells Fargo's obligation under the instant contract was performed improperly, hurriedly, and negligently. We are not persuaded by Wells Fargo's assertion that the patrolman simply made a mistake which amounts to ordinary negligence. See and compare, Birdsong v. Barber, 176 So.2d 239, 241 (La. App. 4th Cir.1965). Whether we use the definitions suggested by Wells Fargo, or those from legislative and jurisprudential sources, we find that the trial court correctly determined that the conduct of the Wells Fargo patrolman constituted gross negligence. Accordingly, we find no error in the trial court's factual and legal determination that the conduct of Wells Fargo's employee constitutes gross negligence, which resulted in Rosenblath's damages, and for which Wells Fargo, under the contract, is liable. See and compare, Charbonnet v. Orkin Exterminating Co., 254 So.2d 148, 151 (La.App. 4th Cir.1971). It follows that the trial court also correctly determined that the limitation of liability clause of the contract does not apply under these circumstances, therefore Wells Fargo's liability is not limited to the amount stated in that clause.
We now turn to the issue of whether the subrogation agreement between Rosenblath's and its insurer affects the amount of Wells Fargo's liability to Rosenblath's.

Subrogation and the Collateral Source Rule: Is Wells Fargo's liability offset by that which was paid by Rosenblath's insurer?
The trial court found that the Rosenblath's loss was $97,653.19 in sales and inventory. Neither party challenges this finding. In its written reasons for judgment, the trial court stated that,
From this amount plaintiff received from his insurer, the sum of $28,484 for loss of contents, and $5,577 for loss of profits. In exchange for that payment, plaintiff assigned all of his rights to collect that amount to his insurer. He reserved only the right to collect any amounts over and above the amount paid by the insurer.
The plaintiff is not the owner of the right to collect the amounts paid by the insurer. As a result, plaintiff is entitled to recover $63,592.19 in these proceedings, together with applicable interest.
In its answer to the appeal, plaintiff-appellee, Rosenblath's, asserts that the trial court erred in reducing its damages by the amount paid to it by its insurer. However, defendant-appellant, Wells Fargo, asserts that this deduction was correct.
Both Rosenblath's and Wells Fargo rely upon the following language in the alarm protection agreement:
17. SUBROGATION. Subscriber [Rosenblath's] does hereby for himself and any parties claiming under him, release and discharge Contractor [Wells Fargo] from and against all hazards covered by Subscriber's insurance, it being expressly *974 understood and agreed that no insurance company or insurer will have any right of subrogation against Contractor.
Rosenblath's contends that this clause in the contract disclaims the validity of any subrogation in favor of an insurer. Rosenblath's also argues that, notwithstanding the subrogation, the collateral source rule applies. By contrast, Wells Fargo contends that, in this clause of the contract, Rosenblath's waived its right to collect any amounts paid by its insurer. Wells Fargo also argues that the collateral source rule is not applied by Louisiana courts to breach of contract cases.
The narrow issue before this court is whether the trial court erred in reducing the damage award by the amounts Rosenblath's received pursuant to the above subrogation agreement between Rosenblath's and its insurer, The USF & G Companies. If clause 17 is a valid waiver of subrogation, then the trial court correctly deducted Rosenblath's insurance proceeds from the total damages. If not, then we must determine whether the subrogation agreement between Rosenblath's and its insurer affects its ability to recover the total damage amount from Wells Fargo.
The language of clause 17 is unambiguous with regard to Rosenblath's release of Wells Fargo from liability for hazards covered by Rosenblath's insurer. By contrast, the language of the waiver of subrogation in Peacock's, Inc. v. Shreveport Alarm Co., 510 So.2d 387, 403 (La.App. 2d Cir.1987), writs denied, 513 So.2d 826, 827, 828 (La.1987) rendered the waiver null and void to the extent that it invalidated the insurance or increased insurance premiums.
A party may legally contract with another party to exclude liability for his negligence if the exculpatory agreement clearly expresses that intent. Rhodes v. Congregation of St. Francis, 476 So.2d 461, 463 (La. App. 1st Cir.1985); Banner Chevrolet, supra, 508 So.2d at 967. All exculpatory contracts are not ipso facto null and void; parties are free to make their own contracts except in instances and under conditions inhibited by law, morals, or public policy. Alan Abis, Inc. v. Burns Electronic Security Services, Inc., 283 So.2d 822, 826 (La.App. 2d Cir.1973).
Unless void as against public policy, the parties are free to include this release in the alarm protection agreement. Rosenblath's has cited, and we have found, no statutory or jurisprudential prohibition which applies to these circumstances. For these reasons, we do not reach the issue of the effect of the subrogation agreement and we agree that the trial court's calculation is correct.

CONCLUSION
The contractual limitation of liability does not apply to limit Wells Fargo's liability for the damages which were caused by its grossly negligent conduct. Wells Fargo is bound by the contract for damages arising from this grossly negligent conduct. Thus, the assignments of error raised by defendant-appellant, Wells Fargo, are without merit.
The amount requested by Rosenblath's in its answer to the appeal is an amount which was covered by the insurer, and thus an amount from which Wells Fargo is released under the contract. The trial court correctly awarded damages which did not include the amount covered by Rosenblath's insurer.
For these reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] The parties to the alarm protection agreement were Rosenblath's and Shreveport Alarm Company. Shreveport Alarm Company was succeeded by defendants, Baker Industries, Inc. and Baker Protective Services, Inc. However, by the time of trial, Baker Industries, Inc. was no longer a party. Hence, the only defendant is Baker Protective Services, Inc., consistently referred to herein as "Wells Fargo."
[2] Although begun by Rosenblath's, Inc., upon voluntary liquidation of the corporation, store owner Philip Rosenblath was substituted as plaintiff for the corporation. However, for convenience, we shall refer to plaintiff as "Rosenblath's."