h CARAWAY, J.
Plaintiff was granted supervisory review in this case after the trial court announced a proposed jury instruction regarding the standard of care applicable to the actions of an emergency vehicle driver, whose ambulance was struck from the rear while parked partially in a lane of an interstate highway. The proposed instruction, like the applicable statute, La. R.S. 32:24(D), lists the standard both in terms of ordinary negligence and gross negligence. Finding error in the trial court’s ruling, we reverse, revise the disputed jury instruction, and remand.

Facts and Procedural History

Justin Lenard filed this wrongful death action against an ambulance driver, Erwin Dilley, after Justin’s 21-year-old wife, Natalie Lenard, died from catastrophic injuries received when she rear-ended the ambulance on Interstate 20. Mrs. Lenard was visibly pregnant at the time of the accident. The ambulance was straddling the shoulder and left-hand lane of 1-20 eastbound, partially obstructing the inside lane. Dilley and another Emergency Medical Technician (“EMT”) were assisting a motorist in a different accident, who had been ejected from his vehicle onto the 1-20 median. Mrs. Lenard struck the emergency vehicle at a high rate of speed. Plaintiff asserts that his wife’s vehicle did not leave any skid marks to suggest that she saw the ambulance or attempted to avoid it by braking. Although most of the witnesses stated that the ambulance’s emergency lights were flashing, the record reveals that whether or not the lights were functioning properly at the time of the accident is a disputed factual issue to be determined at trial. Neither Mrs. Lenard nor the 34-week-old fetus survived the accident.
Lenard filed suit individually, and as the succession representative of his deceased wife and unborn child. Dilley, Metro Ambulance Service, Inc. and its insurer answered plaintiffs petition, alleging that under La. R.S. 32:24, they were entitled to immunity for their conduct.
| RIn July, 2000, defendants’ counsel filed a motion in limine alleging that pursuant to La. R.S. 32:24, the degree of negligence plaintiff would have to prove to recover damages resulting from the ambulance driver’s conduct was one of reckless disregard for the safety of others or gross negligence. The motion sought a jury instruction concerning the standard of gross negligence. The trial court, in its reasons for judgment, determined that the proper standard to be proved at trial would be one of gross negligence. The ruling contained the following jury charge, which the court stated would be used at trial:
The driver of an emergency vehicle must act reasonably and prudently under the circumstances. There is no duty for him to take the best course of action. Nor may you find gross negligence on the part of Mr. Dilley if a subsequent review of the facts suggests a better course of action. The standard here is what is reasonable under the circumstances. If you find Mr. Dilley acted reasonably under the circumstances, this would not support a finding that he acted with gross negligence. Unless you believe Mr. Dilley’s conduct displayed *708 gross negligence, you cannot find for the plaintiff.
In response to plaintiffs application for supervisory writs, we granted a writ of certiorari to review the trial court’s proposed jury instruction for the standard of conduct under La. R.S. 32:24.

Discussion

Louisiana’s statute providing for the operation of emergency vehicles is La. R.S. 32:24 (hereafter the “Statute”), which provides as follows:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
| a(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D.The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
In a recent decision, our supreme court characterized the Statute generally as granting “drivers of emergency vehicles certain privileges to disobey specified traffic rules regarding things such as speed limits and red lights in emergency situations.” LeJeune v. Union Pacific Railroad, 97-1843 (La.4/14/98), 712 So.2d 491, 495. In this case, the traffic rule Dilley was allowed to disobey is found in La. R.S. 32:141, which provides that no person shall park any vehicle upon the paved or main traveled part of the highway. See also, Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962) (where the court held that the violation of La. R.S. 32:141 is negligence per se). Nevertheless, the privilege of disobeying the rule against parking a vehicle in a roadway is specifically limited under Section C of the Statute to the situation where the emergency vehicle “is making use of ... visual signals sufficient to warn motorists.”
Another pertinent statute which specifically addresses the degree of .care of other motorists in emergency situations is La. R.S. 32:125, which provides:
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible Uto, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain *709 in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
B. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.
The standard of care for the driver of the emergency vehicle must be viewed in light of the duty imposed on other motorists who must yield to the emergency signals of the ambulance.
After describing the specific conduct of the emergency vehicle driver, Section D of the Statute concludes with a statement of the general standard of care which is at the center of this controversy. Plaintiff urges that Section D imposes a standard of mere negligence upon the driver of an emergency vehicle by stating that the Statute’s parking privilege “shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons.” Defendants urge a standard of gross negligence since Section D also provides that the Statute’s parking privilege does not “protect the driver from the consequences of his reckless disregard for the safety of others.”
The language of Section D has as its source the Uniform Vehicle Code, § 11-106. Therefore, as recently surveyed in an opinion by the Texas Supreme Court, many courts around the nation have struggled with the identical language of Section D and have reached different results regarding the applicable standard of care. See, City of Amarillo v. Martin, 971 S.W.2d 426 (Tex.S.Ct.1998), and cases cited therein. Since we detect the same unresolved struggle in the proposed jury instruction, our grant of a supervisory writ to correct the contradiction[1] in the trial court’s confusing use of both standards in its proposed charge requires that we | sconfront the problem in this unique posture [2] and draft a jury instruction to mirror our conclusion.
Defendants rest their argument for gross negligence upon the “reckless disregard” language of the Statute which has been recognized by this court, and used in other statutes, as corresponding to the concept of gross negligence. Rosenblath’s, Inc. v. Baker Industries, Inc., 634 So.2d 969 (La.App. 2d Cir.), writ denied, 640 So.2d 1348 (La.1994); La. C.C. art. 2315.4 and La. R.S. 14:12 (which defines criminal negligence as “such disregard of the interests of others” that the conduct “amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man”). We agree that “reckless disregard” or the combination of that term with other similar adjectives, such as wanton or malicious, has been used by the legislature and the courts to describe a level of tortious conduct somewhere in an intermediate range of actions that extends from ordinary negligence to intentional torts. See Comment, Reflec *710 tions on Willful, Wanton, Reckless and Gross Negligence, 48 La.L.Rev. 1383 (1988). Nevertheless, Section D’s use of the phrase “reckless disregard,” juxtaposed with “the duty to drive with due regard,” an expression of a mere negligence standard, creates a tension which poses a problem of statutory interpretation. We may resolve this tension by reference to the Statute as a whole. La. C.C. art. 12.
The specific conduct sanctioned by the Statute in this case is parking in the roadway. Such conduct is, generally speaking, a violation of the law or substandard conduct from which ordinary negligence may result. See, Dixie Dnve It Yourself System New Orleans Co., supra. The Statute therefore can be viewed lain one sense as exempting an EMT from the ordinary negligence associated with such parking. The use of the term “reckless disregard” reflects directly upon the high risk action of parking in a roadway and suggests a level of conduct where parking in the roadway will result in driver fault.
The higher risk action of parking in the roadway is conditioned in Section C of the Statute by the requirement to “mak[e] use of audible or visual signals sufficient to warn motorists.” (Emphasis ours) We find this sufficiency of the warning test a more specific standard by which to measure the EMT’s actions. This standard aligns the Statute as a whole closer to measuring ordinary negligence, analogously to the standard of care of a manufacturer of an inherently dangerous product, who must use reasonable care to provide the consumer with an adequate warning to avoid products liability. See, La. R.S. 9:2800.57. For example, there is a level of conduct, such as excessive speeding or parking over the crest of a hill, which would preclude other motorists from being sufficiently warned to yield to the emergency vehicle,' thus avoiding the risk of further injury. See, United Bilt Homes, Inc. v. Schmitt, 29,837 (La.App.2d Cir.9/24/97), 699 So.2d 1167; Butcher v. City of Monroe, 31,932 (La.App.2d Cir.), 737 So.2d 189, writ denied, 99-1608 (La.9/17/99), 747 So.2d 566. It is this more specific test for the sufficiency of the warning that serves as the Statute’s central standard to prevent the EMT’s parking privilege from reaching the point of recklessness.
From the above review, we find that the difficult language of Section D of the Statute signals the need for a balancing test, not unlike the risk-utility balancing test for the determination of whether things in our custody present an unreasonable risk of harm.[3] The privileges afforded the EMT under the statute, to 17respond quickly and efficiently to an accident victim, clearly foster social utility. Nevertheless, the magnitude of the risk of speeding or parking in a roadway must be counterbalanced by the sufficiency of the warning to other motorists. Finally, the emergency conditions under which the EMT must act do not require the EMT to make the best decision regarding the parking of the vehicle, so long as there is some degree of warning to other motorists which is determined by the trier-of-fact to be sufficient. *711 Accordingly, the trial court can instruct the jury concerning the multiple factors of the risk-utility analysis suggested by the Statute.
In summary, we find that the issue presented for interpreting the Statute requires more than simply labeling the standard of care for an emergency vehicle driver as ordinary or gross negligence. The Statute permits conduct deviating below the ordinary standard of care expected of other drivers. Yet, insofar as such conduct must not fail to sufficiently warn other motorists, the Statute as a whole more closely prescribes a standard for ordinary negligence. Because of the risk and utility of the EMT’s emergency actions, various factors must be considered and weighed to determine whether fault is present.
Based upon the above review of the Statute, we find that the jury instruction should include the following, subject to the trial court’s discretion to further edit as the case may require:
In responding to an emergency, emergency drivers are allowed under Louisiana law to operate their vehicles by taking higher risk actions, such as speeding or parking the vehicle in a roadway, in order to respond to and deal with the emergency situation. Parking in a roadway is normally substandard conduct falling below a driver’s general duty of reasonable care for the safety of other motorists. Nevertheless, the emergency driver may be found at fault for an accident caused by parking in the roadway only if the audible or visual signals of the vehicle at the parking place do not sufficiently warn other motorists. When the driver parks in the roadway, the law does not require the driver to choose the best |slocation to park, as long as the chosen location sufficiently allows motorists to see or hear the emergency signals. The driver of the emergency vehicle may assume that other drivers will yield to the vehicle when its audible or visual signals are in a location where they sufficiently warn motorists. In determining whether defendant’s parking of the vehicle in the roadway was reasonable under the circumstances presented by this emergency, you may take into account the importance to society of what the defendant was doing, the place of injury of the emergency victim in relation to the place or places where the vehicle could be parked, and the risks of harm presented by the speed and congestion of the traffic and the line of sight of oncoming motorists. After consideration of all factors of the emergency, if you find that the defendant acted reasonably and with due regard for the safety of other motorists, you cannot hold the defendant at fault.

Conclusion

The case is remanded to the trial court for further proceedings consistent with this ruling. Costs are assessed to defendants.
REVERSED AND REMANDED.

. The trial court’s proposed jury instruction in its first and fourth sentences states a mere negligence standard; yet without defining "gross negligence,” the charge concludes that "unless you believe Mr. Dilley’s conduct displayed gross negligence, you cannot find for the plaintiff.”

. The Louisiana jurisprudence generally has considered the application of La. R.S. 32:24 in circumstances after trial where the issue of manifest error has predominated over the applicable standard of care. The standard of care has been expressed in the jurisprudence with both concepts — “reckless disregard for the safety of others” and "with due regard for the safety of all persons” — being discussed together without delineation. Smith v. Commercial Union Insurance Co., 609 So.2d 1024 (La.App. 2d Cir.1992), writ denied, 612 So.2d 86 (La.1993).

. Our supreme court has recently described the risk-utility analysis as follows: "There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. To assist the trier-of-facts, we note that many factors are to be considered and weighed, including: (1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; • (5) individual and societal rights and obligations; and (6) the social utility involved.” Dupree v. City of New Orleans, 99-3651 (La.8/31/2000), 765 So.2d 1002, 1012.